Farrar & al. *v.* Eastman

FARRAR & AL. *vs.* EASTMAN & AL.

Under the statute of 1753, Ancient Charters *ch.* 253, the committee for the
sale of the lands of delinquent proprietors, might consist of one person
only ;—and a designation of the collector, for that purpose, by the name
of his office alone, was sufficient.

In an action of trespass *quare clausum fregit,* the defendants at-
tempted to show title in themselves under a deed from *John Knox,*

44

ar & al. *v.* Eastman & al.

collector of taxes for the proprietors of *New-Suncook,* dated *April* 5, 1780, and recorded *May* 8, 1797, conveying a right in the *locus in quo* to *William Knox*; it having been stricken off to him as the highest bidder, at a sale of the lands of delinquent proprietors, for the nonpayment of taxes assessed by the corporation. The deed recited his office of collector, and the sale at public vendue for delinquency. in the payment of taxes; and contained a covenant of warranty, in the collector's official capacity, against the original grantee of the right. The authority to make the conveyance was in a vote, passed among various other transactions of the proprietors, at a meeting holden *Nov.* 10, 1779, in these words :—" Voted, that the collector be empowered to give deeds of the lands sold for taxes."

This deed, and the vote of the proprietors, being offered in evidence by the defendants, were rejected by the Chief Justice, before whom the cause was tried ; and the question of their admissibility was re-, served for the consideration of the court, a verdict being returned for the plaintiffs.

*Longfellow,* for the defendants, cited the provincial statute of 1753 2. *LL. Mass. app.* 1036, providing that if the taxes assessed by proprietors of lands were not paid, their committee, or the major part of them, might sell at public auction, and convey so much of the delinquent proprietor's right as should be sufficient, &c. And he argued that the statute did not prevent the proprietors from delegating this authority to one person alone ; but only required that if the committee consisted of a greater number, a majority of them must concur in the sale. The appointment, therefore, was in conformity with the statute, and the evidence ought to have been admitted.

But if the vote was rightly rejected, the deed itself was admissible to show the date and extent of the defendants' claim. *Robison v. Swett & al.* 3. *Greenl.* 316. Moreover, being more than thirty years old, it was admissible without proof of its execution ; *Stockbridge v. West Stockbridge* 14. *Mass.* 257 ;—and undisturbed possession, during that term, of chattels or lands conveyed by one acting as agent, will be sufficient evidence of his authority. *Gray v. Gardiner* 3. *Mass.* 399. *Knox v. Jenks* 7. *Mass.* 488. *Col-*

Farrar & al. *v.* Eastman & al.

*man v. Anderson* 10. *Mass.* 105. *Pickering v. Fairfield* 11. *Mass.* 227.

*Fessenden*, for the plaintiffs. The provision of the statute of 1753 is that if any proprietor shall neglect to pay the taxes duly assessed upon his right, " then *the* committee of the proprietors of such common lands, or the major part of such committee, may and are hereby fully empowered, from time to time, at a public vendue to sell" &c. This plainly refers to an existing standing committee, consisting of more than one person; and it must mean that committee to whom payment of the taxes is to be made. What is thus intended is found by reference to the provincial act of 1735, 8. *Geo.* 2. *ch.* 190 of the Ancient Charters, which empowers proprietors " to choose a committee for managing the affairs of the propriety." The persons, therefore, who are authorized to give deeds, are those who were already entrusted with the general affairs of the corporation. Hence the proprietors had no authority to appoint the collector to give deeds; the legislature having placed that power in other hands. This construction is recognized in *Bott v. Perley* 11. *Mass.* 175, and is justified by *Stat.* 1783. *ch.* 39, which revised both the preceding statutes, and directed the committee to make the sale.

Nor ought the deed to have been admitted to show the date and extent of the defendants' claim. It was not, like the deed in *Robison v. Swett & al.* a deed of a distinct parcel in severalty; but was of an undivided portion of a right in common, in the whole township. It could not therefore operate a disseisin of the owner of the right, unless it could also be a disseisin of the other tenants in common, each one being seised *per mie & per tout.*

Neither could any authority in *Knox* be presumed, after any lapse of time, against the evidence in the cause, it being apparent that the proprietors could not confer the power contended for.

The arguments, of which the foregoing is a brief summary of so much as related to the point decided, there being others in the cause, were delivered in writing, in the last vacation; and in this term the opinion of the Court was delivered by

WESTON J. The deed of *John Knox* to *William Knox*, dated

*April* 5, 1780, under which the defendants claim, having been offered in evidence by them, and having been rejected by the presiding judge, if it was legally admissible, the verdict is to be set aside, and a new trial granted. Both parties trace their title to *Benjamin Ballard.* The deed of *John Knox* purports to convey three fourths of *Ballard's* right; he being delinquent in the payment of taxes, imposed by the propriety of which he was a member. The authority, under which *Knox* acted, is in evidence in the case; and is, it is insisted, void on the face of it, and insufficient, therefore, to give any legal effect or validity whatever to the deed.

The power to sell the shares of delinquent proprietors, is derived from the provincial act of 26. *Geo.* 2, passed in *May* 1753, Ancient Charters, 588. In the second section of this act it is provided, that " every such proprietor, as shall neglect to pay to the collector or treasurer or committee of such propriety, such sum or sums of money, as shall from time to time be duly granted and voted to be raised and levied upon his right and share in such lands, for the space of six months, to those who live in the province, and twelve months to those who live out of the province, after such grant, and his proportion thereof shall be published, in the several Boston weekly newspapers, then the committee of the proprietors of such common lands, or the major part of such committee, may and are hereby fully empowered from time to time, at a public vendue, to sell and convey away so much of such delinquent proprietor's right or share in said common lands, as will be sufficient to pay and satisfy his tax or proportion of such grant, and all reasonable charges attending such sale, to any person that will give most for the same, notice of such sale being given in the said prints forty days at least before hand; and may accordingly execute and give a good deed or deeds of conveyance of the lands so sold, unto the purchaser thereof, to hold in fee simple." By the committee here designated, it is contended, must be understood the committee appointed to manage the prudential concerns of the propriety. There is nothing in the act, which confers upon the committee any powers, except what relate to delinquent taxes. It purports to be in addition to the provincial act of *Anne, ch.*

Farrar & al. *v.* Eastman & al.

12, Ancient Charters, 402, directing how meetings of proprietors of lands lying in common may be called. Between the passage of the act last mentioned and the one in question, the provincial act of 8, *Geo.* 2, had passed, entitled an act directing how meetings of proprietors in wharves, or other real estate besides land, may be called. And at meetings thus called, these proprietors were authorized to choose a committee for managing the affairs of the propriety. That the provincial legislature did not consider this act applicable to proprieties of the description now under consideration, although in its general terms broad enough to embrace them, is apparent from the preamble to the act of 1753, which recited that there are sundry tracts of common and undivided lands in the province, lying within no township or precinct, and that no effectual provision had been made by law for calling meetings of such proprietors. It then goes on to prescribe a mode, like that provided for in the act of George the second. This last act principally related to wharves ; and might be intended also to include some other species of common property, requiring disbursements for repairs, and producing an annual profit, the management of which might require the care and oversight of a standing committee. Whether proprietors of common and undivided lands, lying without the bounds of any incorporated town or precinct, should or should not have a general committee of this description, would depend upon the views which each propriety might entertain as to what the exigency of their affairs required. We are not therefore satisfied that the committee, authorized to sell by the act of 26 *Geo.* 2, must necessarily be clothed with authority to manage the affairs of the propriety ; but that the terms of the act are sufficiently satisfied, by the appointment of a committee in relation to delinquent taxes.

*John Knox,* it is urged, could not be this committee ; because as the act gives the authority to the committee, or the major part of them, the implication clearly is, that it should consist of more than one person. Committees of proprieties, and of other bodies of men, according to popular usage, are generally composed of three or more ; and hence the legislature provided that a majority of the committee should

be invested with the powers of the whole. But we perceive nothing in the act, or in public policy, of convenience, which would restrain a propriety from confiding this power to a committee of one, if they deemed it expedient so to do. A committee may be defined to be a person or persons, to whose consideration or determination certain business is referred or confided. The authority under which *John Knox*, who was the collector of the propriety, acted, is a vote of the propriety duly certified, which passed *November* 10, 1779, which is in these words : " Voted that the collector be empowered to give deeds of the land sold for taxes." If a deed, vote, or other transaction, be susceptible of a construction consistent with law and with a rightful authority in the party or parties granting, voting or acting, that construction should prevail. Thus if a deed of land be made, without words of limitation, the law construes it to be for the life of the grantee ; but if the grantor had only a life estate in the premises, it shall be deemed for the life of the grantor ; that being all which he has lawful authority to grant. " And it is a general rule, that whensoever the words of a deed, or of the parties without deed, may have a double intendment, and the one standeth with law and right, and the other is wrongful and against law, the intendment that standeth with law shall be taken." *Co. Lit.* 42 *a.* It did not appertain to the office of collector to sell and give deeds of delinquent proprietors' shares; but it was competent for the propriety to appoint the person holding that office, a committee for this purpose. They designate *John Knox*, by the name of his office. If the vote had been that the moderator of the meeting should be thus empowered, the person who had been chosen to that office, would have been authorized to act, not as moderator, for no such authority was incident to his office, but as the individual to whom that power was confided; by a designation as clear and unequivocal, as if he had been expressly named. *John Knox* is not named or described in the vote as a committee ; but he is empowered by the propriety, who had the right to appoint the committee, to do that which could be done only by a committee. That which they had the right and the power to confide or commit to such person or persons, as they might think proper, they

Farrar & al. *v.* Eastman & al.

commit to him. He was then their committee for this purpose. He was empowered to give deeds of lands sold, by which we must understand of such as might be sold, in the manner authorized by law, for taxes. When a power is granted, whatever is necessary to the execution of the power, is also impliedly granted. If he was authorized to give deeds, it was necessary that he should first sell in the mode prescribed by law, and the power to do so is therefore implied.

Thus empowered, *John Knox,* having sold to *William Knox,* he being the highest bidder therefor at public auction, describing himself as the collector of the propriety, and reciting his authority, conveys to him by deed in "his said capacity," that is, as may be legally inferred, the capacity he derives from the vote, three fourths of the right of *Benjamin Ballard,* who is stated to have been delinquent in the payment of taxes. At the close he covenants as collector, to warrant and defend the premises against the claims of the original grantee. What may be the legal effect and operation of this covenant, is a question not now before us. Subsequently to this sale, *William Knox,* and those holding under him, exercised acts of ownership over the part of the right conveyed, and the lots drawn under it; and no evidence appears of any claim or interference of *Ballard,* or his heirs, for almost forty years. It is an ancient transaction ; and neither the vote of the propriety, nor the deed under it, are drawn with any attention to legal precision. It is well known, that much of the business of these proprietors was loosely conducted; and after such a lapse of time, and for the purpose of upholding their proceedings, and of titles derived from them, after such long acquiescence, they are to be viewed with great indulgence. Whether in a recent case, greater precision, and a more clear and perfect deduction and pursuance of authority, would not be required, it is not necessary now to decide. It is not essential that all the facts, necessary to sustain and justify the sale, should be recited in the deed. They may be presumed, or proved *aliunde.* Such as do not appear in the records, and among the papers of the propriety, may, and, after such a length of time, will be presumed.

Farrar & al. *v.* Eastman & al.

The opinion of the court is, that the deed of *John Knox*, which was rejected at the trial, was by law admissible in evidence. The verdict is therefore set aside, and a new trial granted.